UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CHRISTOPHER J. SMITH,

                    Plaintiff,

v.

MATT MCCAULEY et al.,

                    Defendants.

_____/

Case No. 1:25-cv-869

Honorable Maarten Vermaat

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.)  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants McCauley, Ramirez, Rockwell, and Brooke.

The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Duiven: (1) official capacity claims; (2) any intended First Amendment retaliation claims; and (3) any intended Fourteenth Amendment procedural due process claims.

Plaintiff's personal capacity Eighth Amendment claim for failure to protect/indifference to personal safety against Defendant Duiven remains in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains, however, occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues the following IBC personnel in their official and personal capacities: **Warden Matt McCauley, Grievance Coordinator N. Brook, Sergeants Unknown Ramirez** and **T. Rockwell, and Corrections Officer Unknown Duiven.**

Plaintiff alleges that on September 21, 2024, another inmate approached Defendant Duiven about a missing JP6 tablet. (Compl., ECF No. 1, PageID.3.) Defendant Duiven told that inmate that Plaintiff had stolen the tablet. (*Id.*) Defendant Duiven then allowed that inmate to come into Plaintiff's cell on three separate occasions, and the inmate threatened Plaintiff with physical harm during yard time. (*Id.*) Plaintiff contends that the inmate "was out at a time when the unit was locked down, and had no reason to be out." (*Id.*) Later that day, during rounds, Plaintiff asked Defendant Duiven to shake down his cell for the stolen tablet and asked her why she had lied. (*Id.*) Defendant Duiven responded that Plaintiff "was a racist [and would] get what was coming to [him]." (*Id.*)

That same day, Defendant Ramirez came to Plaintiff's cell and asked Plaintiff to return the stolen tablet. (*Id.*) Plaintiff told Defendant Ramirez that he did not have the tablet; Defendant Ramirez responded, "yes you do." (*Id.*) Plaintiff asked Defendant Ramirez to shake down his cell for the tablet, and Defendant Ramirez refused to do so. (*Id.*)

On September 22, 2024, Plaintiff was assaulted as he was going out for yard time. (*Id.*) Plaintiff's nose was broken, and both of his eyes swelled shut. (*Id.*)

4

Plaintiff filed a grievance and claims that Defendant Rockwell fabricated dates and times on the grievance "and had another prisoner['s] statement on [the] grievance that did not pertain to the issue" that Plaintiff had presented. (*Id.*) On October 7, 2024, Plaintiff submitted his Step II appeal to Defendant Brooke. (*Id.*) Plaintiff contends that no one ever interviewed him regarding the Step II appeal in the time allotted to do so. (*Id.*) Defendant McCauley responded to Plaintiff's Step II grievance on February 18, 2025. (*Id.*, PageID.4.) Plaintiff's Step III appeal was denied as well. (*Id.*, PageID.3.)

Based upon the foregoing, the Court construes Plaintiff's complaint to assert Eighth Amendment failure to protect/indifference to personal safety claims against Defendants Duiven and Ramirez, and constitutional claims regarding the handling and denial of his grievances against Defendants Rockwell, Brooke, and McCauley. Plaintiff also mentions being engaged in "prior protected conduct," (*id.*, PageID.4), so the Court construes his complaint to assert First Amendment retaliation claims as well. Finally, Plaintiff indicates that he received a misconduct report for fighting, so the Court construes Plaintiff's complaint to assert Fourteenth Amendment procedural due process claims based upon receipt of that misconduct. As relief, Plaintiff seeks compensatory and punitive damages. (*Id.*, PageID.4–5.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff has sued all Defendants in their official and personal capacities. (Compl., ECF No. 1, PageID.2–3.)

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has

waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).

As relief, Plaintiff seeks only compensatory and punitive damages. (Compl, ECF No. 1, PageID.4–5.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. *See, e.g.*, *Lapides*, 535 U.S. at 617. Similarly, Plaintiff may not seek monetary damages against Defendants in their official capacities. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983."). Thus, Plaintiff's official capacity claims against Defendants will be dismissed for failure to state a claim.

### B.    Personal Capacity Claims

#### 1.    Claims Regarding the Handling and Denial of Grievances

The Court has construed Plaintiff's complaint to assert claims related to the handling of Plaintiff's grievances and complaints against Defendants McCauley, Brooke, and Rockwell and to seek to hold these Defendants liable for the actions of their subordinates based on their supervisory positions. As an initial matter, various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th

Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569– 70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Moreover, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, any interference with the grievance process or inadequate responses to Plaintiff's grievances did not deprive Plaintiff of due process.

Moreover, to the extent that Plaintiff intended to allege that his right to petition the government was violated by any interference with the grievance process, this right is not violated by a failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Additionally, any inaction or action by Defendants McCauley, Brooke, and Rockwell did not bar Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his

*pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *Cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required).

Furthermore, § 1983 liability may not be imposed simply because an official denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Additionally, to the extent that Plaintiff seeks to hold Defendants McCauley, Brooke, and Rockwell liable due to their respective supervisory positions, he fails to state such a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300);
*see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995
F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege facts suggesting that Defendants McCauley, Brooke, and
Rockwell encouraged or condoned the conduct of the other Defendants, or authorized, approved,
or knowingly acquiesced in that conduct. As set forth *supra*, Defendants McCauley, Brooke, and
Rockwell were involved in responding to Plaintiff's grievances and complaints, but that is
insufficient to establish liability under § 1983. *See Shehee*, 199 F.3d at 300. Accordingly, for all
the foregoing reasons, Plaintiff has failed to state a cognizable claim pursuant to § 1983 against
Defendants McCauley, Brooke, and Rockwell. The Court, therefore, will dismiss Defendants
McCauley, Brooke, and Rockwell for Plaintiff's failure to state a claim upon which relief can be
granted against them.

### 2.    First Amendment Retaliation

As set forth above, Plaintiff mentions being engaged in "prior protected conduct." (Compl.,
ECF No. 1, PageID.4.5.) Based upon that statement, the Court construes Plaintiff's complaint to
assert First Amendment retaliation claims against all Defendants.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the
Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to
set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was
engaged in protected conduct; (2) an adverse action was taken against him that would deter a
person of ordinary firmness from engaging in that conduct; and (3) the adverse action was
motivated, at least in part, by the protected conduct. *Id.*

It is well recognized that "retaliation" is easy to allege and that it can seldom be
demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005);

*Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Here, Plaintiff merely alleges the ultimate fact of retaliation. Although Plaintiff suggests that he was engaged in protected conduct before Defendants were deliberately indifferent to his safety, Plaintiff does not set forth any facts regarding that protected conduct, nor does he suggest that any of the named Defendants allowed Plaintiff to be assaulted because of any prior protected conduct. Moreover, while Plaintiff did engage in protected conduct when he filed his grievance, *see Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016), and while receipt of a misconduct can constitute adverse action, Plaintiff's exhibits suggest that none of the named Defendants were responsible for issuing the misconduct on September 22, 2024 (ECF No. 1-1, PageID.17), and his exhibits indicate that he filed his grievance on September 23, 2024 (*id.*, PageID.9), one day **after** he received the misconduct ticket.

Accordingly, for the foregoing reasons, the Court will dismiss any intended First Amendment retaliation claims against the named Defendants.

### 3.    Eighth Amendment Claims

The Court has construed Plaintiff's complaint to assert Eighth Amendment failure to protect/indifference to personal safety claims against Defendants Duiven and Ramirez.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with " 'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference

12

standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson*, 468 U.S. at 526–27. In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. To establish a violation of this right, Plaintiff must show that Defendants Duiven and Ramirez were deliberately indifferent to Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988).

That said, a prisoner ordinarily does not need to prove that he has been the victim of an actual attack to bring a personal safety claim; instead, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety"); *see also Gresham v. Walczak*, No. 1:20-cv-310, 2020 WL 7872192, at *2 (W.D. Mich. Nov. 30, 2021)

13

(holding that an officer's accusation that a prisoner was a snitch, coupled with a threat of physical harm from a prisoner, was sufficient to state an Eighth Amendment claim).

### a.    Defendant Duiven

Plaintiff alleges that on September 21, 2024, Defendant Duiven told another inmate that Plaintiff had stolen that inmate's tablet and then allowed that inmate to come into Plaintiff's cell on three separate occasions that day to threaten Plaintiff with "physical harm when the yard was opened." (Compl., ECF No. 1, PageID.3.) During rounds, when Plaintiff asked Defendant Duiven why she had lied, she said that Plaintiff "was a racist [and would] get what was coming to [him]." (*Id.*) Plaintiff was ultimately assaulted during yard time on September 22, 2024. (*Id.*) Taking Plaintiff's allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's personal capacity Eighth Amendment failure to protect/indifference to personal safety claim against Defendant Duiven on initial review.

### b.    Defendant Ramirez

With respect to Defendant Ramirez, Plaintiff alleges only that on September 21, 2024, Defendant Ramirez asked that Plaintiff return the tablet and insisted that Plaintiff had the tablet when Plaintiff responded that he did not. (Compl., ECF No. 1, PageID.3.) Defendant Ramirez refused Plaintiff's request to shake down the cell for the tablet. (*Id.*) Plaintiff's complaint is devoid of any allegations from which the Court could infer that Defendant Ramirez was aware of any risk of harm to Plaintiff and was deliberately indifferent to that risk. Although Plaintiff alleges that Defendant Duiven allowed another inmate to threaten Plaintiff with physical harm on three occasions before Plaintiff spoke to Defendant Ramirez, Plaintiff sets forth no facts from which the Court could infer that Defendant Ramirez was aware that these threats had even occurred. Moreover, Plaintiff fails to allege any facts suggesting that Defendant Ramirez was aware that Defendant Duiven had told the other inmate that Plaintiff had stolen the tablet and allowed the

inmate to threaten Plaintiff. Plaintiff's allegations are insufficient to set forth a plausible Eighth Amendment failure to protect/indifference to personal safety claim against Defendant Ramirez. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Ramirez will be dismissed.

### 4.    Fourteenth Amendment Due Process Claims

Finally, the Court has construed Plaintiff's complaint to assert Fourteenth Amendment procedural due process claims premised upon his receipt of a misconduct for fighting. (Compl., ECF No. 1, PageID.5.)

A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

Here, Plaintiff provides no facts regarding the outcome of his misconduct proceedings. Instead, he has only attached a copy of the misconduct ticket, which was issued on September 22, 2024, by non-party Officer Klein. (ECF No. 1-1, PageID.17.) Regardless of the outcome of Plaintiff's misconduct proceedings, the allegations of Plaintiff's complaint and exhibits reveal that Plaintiff's misconduct charge did not fall into either of the categories identified in *Sandin* as sanctions that cannot be imposed without due process, that is, those having an inevitable effect on the duration of Plaintiff's sentence or imposing an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when

15

it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff sets forth no facts from which the Court could infer that he suffered a "significant and atypical deprivation." In fact, Plaintiff does not even state whether he was convicted of the Class I misconduct for fighting.

In sum, for the reasons set forth above, any intended Fourteenth Amendment procedural due process claims against Defendants will be dismissed.

### Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Moreover, having conducted the review required by the PLRA, the Court determines that Defendants McCauley, Ramirez, Rockwell, and Brooke will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Duiven: (1) official capacity claims; (2) any intended First Amendment retaliation claims; and (3) any intended Fourteenth Amendment procedural due process claims. Plaintiff's personal capacity Eighth Amendment claim for failure to protect/indifference to personal safety against Defendant Duiven remains in the case.

An order consistent with this opinion will be entered.

Dated:    October 14, 2025                        /s/ *Maarten Vermaat*
                                                  Maarten Vermaat
                                                  United States Magistrate Judge

16